```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION


TERESA A. MITCHELL,              :

     Plaintiff,                  :

vs.                              :
                                    CIVIL ACTION 06-0504-KD-M
MICHAEL J. ASTRUE,[1]            :
Acting Commissioner of
Social Security,                 :

     Defendant.                  :
```

REPORT AND RECOMMENDATION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*). The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was heard on March 19, 2007. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Teresa A. Mitchell.

---

[1] Effective February 1, 2007, Michael J. Astrue was confirmed by the Senate to serve as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born October 24, 1969.  At the time of the administrative hearing, Mitchell was thirty-six years old, had completed one year of college (Tr. 183), and had previous work experience as a nurse's aide and telemarketer (Tr. 193).  In claiming benefits, Plaintiff alleges disability due to obesity, hypertension, and shortness of breath (Doc. 9 Fact Sheet).

The Plaintiff filed applications for disability insurance benefits and SSI on August 18, 2004, asserting a disability date of January 1, 2007 (Tr. 46-48, 158-64).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Mitchell was capable of performing her past relevant work as a telemarketer (Tr. 10-21).  Plaintiff requested review of the hearing decision (Tr. 7-8) by the Appeals Council, but it was denied (Tr. 4-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Mitchell alleges that:  (1) The ALJ did not perform the mental and physical function-by-function analysis of her abilities as required by SSR 96-8p; (2) the ALJ did not consider her morbid obesity; and (3) she is not capable of performing her past relevant work as a telemarketer (Doc. 9).  Defendant has responded to—and denies—these claims (Doc. 10).  Before discussing Mitchell's claims, the Court will set out the medical evidence of record.

Plaintiff was examined by Dr. Sid Crosby, a family practitioner, on four occasions between October 30, 2003 and August 11, 2004 (Tr. 108-16, 129).  Mitchell was treated, primarily, for a urinary tract infection (Tr. 116), pursuant to an employment examination (Tr. 114), for uncontrolled hypertension (Tr. 111), and for obesity (Tr. 108).  At the time of the last exam, the doctor noted that Plaintiff admitted that she had not been taking her medications because of the expense (Tr. 108).  Generally, Dr. Crosby noted that, although Mitchell was morbidly obese, she was in no acute distress; he noted no limitations in her abilities and placed no restrictions on her activities.

On October 15, 2004, Plaintiff was examined by Dr. Mohammed A. Nayeem, a family practitioner, at the request of the Social

Security Administration (Tr. 117-20, 130; *see also* Tr. 15). The doctor generally noted that Mitchell suffered from morbid and gross obesity, weighing in at 410 pounds; he specifically noted that he could not measure her blood pressure because no cuff would fit her arm. Dr. Nayeem performed numerous range-of-motion measurements, finding her generally able to perform the requested movements, though she was unable to heel/toe walk and squat. His summary paragraph is set out herein completely:

> Except for gross, exogenous, morbid obesity, the physical examination was unremarkable. She definitely needs bariatric surgery. Otherwise, eventually her weight will continue increasing and will go to 500 and even higher, and she will face serious health problems. She definitely needs some financial help, enough at least to get the surgery done, and lose at least 200 pounds. Then she won't have any complaints.

(Tr. 120).

Mitchell was also examined by Dr. Robert D. Lightfoot, a family practitioner, on seven occasions between November 5, 2004 through December 21, 2005 (Tr. 131-57). The doctor treated her regularly for morbid obesity and hypertension though there were also complaints of back pain (Tr. 139-40), fluid on her legs (Tr. 137), a strained left calf muscle (Tr. 135-36), pain and swelling in her right ankle, dizziness, and headaches (Tr. 133-34), and the flu (131). On the first examination, the doctor encouraged Plaintiff to return to work as soon as possible; he also noted

that Mitchell needed diet counseling and that a gastrointestinal bypass was indicated though it was not available for socio-economic reasons (Tr. 144).  Dr. Lightfoot regularly encouraged diet and exercise as well as weight reduction (Tr. 132, 134, 138, 140, 142, 144); the doctor also routinely stressed the need for Plaintiff to be compliant with her medications (Tr. 132, 134, 136, 140, 142).  The Court notes that Lightfoot generally found Plaintiff to be in no acute distress and her systems normal; as with Dr. Crosby, Lightfoot noted only self-reported limitations in her abilities and placed no restrictions on her activities.  This concludes the medical evidence of record conducted by examining physicians.[2]

Plaintiff first claims that the ALJ did not perform the mental and physical function-by-function analysis of her abilities as required by SSR 96-8p (Doc. 9, pp. 6-8).  Mitchell has specifically quoted the following language from that ruling:

> The [Residual Functional Capacity (hereinafter *RFC*)] assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional

---

[2] It is noted that the ALJ went into greater detail in summarizing the medical evidence (*see* Tr. 15-17) than the Court has done herein.  However, as there were no complaints concerning the ALJ's recounting of the evidence, the Court sees no need for the longer recitation.

>      levels of work, sedentary, light, medium,
>      heavy, and very heavy.

SSR 96-8p, *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims,* 1996 WL 374184, *1 at ¶ 4.  The Court notes further instructive language from that Ruling which states as follows:

>       RFC is an issue only at steps 4 and 5 of
>  the sequential evaluation process.  The
>  following are issues regarding the RFC
>  assessment and its use at each of these
>  steps.
>       RFC and exertional levels of work.  The
>  RFC assessment is a function-by-function
>  assessment based upon all of the relevant
>  evidence of an individual's ability to do
>  work-related activities.  At step 4 of the
>  sequential evaluation process, the RFC must
>  not be expressed initially in terms of the
>  exertional categories of "sedentary,"
>  "light," "medium," "heavy," and "very heavy"
>  work because the first consideration at this
>  step is whether the individual can do past
>  relevant work as he or she actually performed
>  it.
>       RFC may be expressed in terms of an
>  exertional category, such as light, if it
>  becomes necessary to assess whether an
>  individual is able to do his or her past
>  relevant work as it is generally performed in
>  the national economy.  However, without the
>  initial function-by-function assessment of
>  the individual's physical and mental
>  capacities, it may not be possible to
>  determine whether the individual is able to
>  do past relevant work as it is generally
>  performed in the national economy because
>  particular occupations may not require all of
>  the exertional and nonexertional demands
>  necessary to do the full range of work at a
>  given exertional level.

*Id.* at *3.

In this action, the ALJ faithfully recounted all of the medical evidence and discussed Plaintiff's reporting of her daily activities (Tr. 15-17).  The ALJ then rendered his fifth finding, *viz.*, that "the claimant has the residual functional capacity to sedentary work activity sedentary work activity [sic] which involves lifting and/or carrying no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" (Tr. 17).[3]  Next, the ALJ found that Mitchell's obesity did not provide a basis for finding her disabled (Tr. 17).[4]  The next finding was that Plaintiff was not credible as her testimony of limitation was unsupported by the medical evidence (Tr. 18); the Court notes that Mitchell has not challenged this finding (*see* Doc. 9).

The ALJ then noted "the paucity of medical evidence in this case," before finding that Plaintiff was capable of sedentary work (Tr. 19).  The ALJ discounted Mitchell's allegation of depression to Dr. Nayeem, finding it to be no more than a mild problem as she had never undergone treatment or taken medication

---

[3]The Court notes that the ALJ sprinkled his findings throughout the determination, in outline form, rather than listing them all at the conclusion of the decision as is the usual method.  The Court finds nothing objectionable in this system of analysis though it results in the announcement of the conclusion before the means to that end is accomplished.

[4]The Court is aware that Plaintiff has raised a claim regarding this finding; it will be addressed in short order.

for any mental health problem (Tr. 19; *see also* Tr. 117).  The ALJ then noted that there was "no objective evidence that the claimant is incapable of sitting for up to six hours with normal break periods as required by sedentary work.  No physician of record has restricted the claimant from prolonged sitting" (Tr. 19).  The ALJ went on to note that Plaintiff had told Dr. Nayeem that sitting was not a problem for her (Tr. 19; *see also* Tr. 117).  The ALJ then discussed the testimony of the Vocational Expert and found Mitchell capable of performing her previous relevant work as a telemarketer (Tr. 20).

The Court notes that Plaintiff has the burden of proving that she cannot perform her past relevant work.[5]  *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (*citing Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).  However, the Eleventh Circuit Court of Appeals has further held that

> [a]lthough a claimant bears the burden of demonstrating an inability to return to his past relevant work, the Secretary has an obligation to develop a full and fair record. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Where there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the Secretary cannot properly determine whether the

---

[5] Even though Plaintiff's third claim—that she is incapable of performing the job of telemarketer—would normally be addressed later in this report, the Court finds it expeditious to address it now.

>     claimant has the residual functional capacity
>     to perform his past relevant work. *Nelms*,
>     803 F.2d at 1164.

*Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

Plaintiff has challenged the finding that she can perform work as a telemarketer, arguing that she can not squat and has difficulty walking because of her obesity (Doc. 9, p. 7; *cf.* Tr. 120[6]).  Mitchell also noted that she had difficulties with postural limitations and complains that the ALJ failed to consider the mental requirements of the job (Doc. 9, p. 7).  The Court notes that the evidence of record regarding Plaintiff's job is limited to a notation in a Social Security form on which a worker stated that Mitchell had said that "she did not have to lift anything and just sat behind a desk and solicited and called people to sell things but no one called her" (Tr. 93).

The Court first notes that Plaintiff's assertion that she had difficulty walking was not supported by Dr. Nayeem's conclusions.  His specific findings were that "[s]he walked with a normal gait without any problem [though s]he could not perform heel/toe walk because of her extreme and gross obesity;" he did also note that she could not squat (Tr. 120).  As for postural limitations, a non-examining physician indicated that Mitchell

---

[6]Mitchell incorrectly credited the State Agency Physician for these findings, though she gave the correct page citation.  Dr. Nayeem was the author of these comments, however.

would frequently be limited in her ability to balance, stoop, kneel, crouch, and crawl while occasionally being limited in climbing stairs (Tr. 123).

The Court notes that Plaintiff's job as a telemarketer, as she described it, required no squatting, balancing, stooping, kneeling, crouching, crawling, or climbing.  Furthermore, the ALJ found that Mitchell had no severe mental impairments (Tr. 19), a finding that this Court finds is supported by substantial evidence.  Even though Plaintiff has asserted that the ALJ did not develop the record with regard to the duties and responsibilities of being a telemarketer (Doc. 9, p. 11), the Court notes that Mitchell had the opportunity to provide that information in a form completed in the processing of these applications and declined to do so (*see, e.g.*, Tr. 70-76).  Though there is little evidence in this record of Plaintiff's telemarketing job, she has provided the evidence of it and stated that she can do it as she described it.  The Court finds that the ALJ's conclusion that Mitchell is capable of performing her past relevant work is supported by substantial evidence.  With regard to Plaintiff's first claim—that the ALJ did not perform the mental and physical function-by-function analysis of her abilities—the Court finds that although the ALJ may have not strictly followed the dictates of SSR 96-8p, he has reached the right conclusion, which is supported by substantial evidence, and

that any error made was, at most, harmless.

Mitchell next claims that the ALJ did not consider her morbid obesity (Doc. 9, pp. 8-11). More specifically, she claims that the ALJ failed to properly consider the impact of her obesity on her RFC. Plaintiff references SSR 02-1p, *Titles II and XVI: Evaluation of Obesity*, 2000 WL 628049 in making her argument.

The ALJ referenced this Social Security ruling as well and found that although her obesity was a severe impairment, it did not lend itself toward a disability finding (Tr. 17). The ALJ went on to find that Plaintiff's complaints of limitation were not supported by the medical evidence,[7] specifically noting that Dr. Nayeem reported an, essentially, normal examination (Tr. 18). The ALJ then described Mitchell's self-reported daily activities (*id.*). The ALJ then noted that Plaintiff had failed to follow a prescribed medication regimen, even though community resources could have provided support in the purchase of those medicines (*id.*).

Plaintiff has argued that the ALJ's finding was inappropriate "[b]ecause of the risks and potential side effects of surgery for obesity" (Doc. 9, p. 11) (quoting SSR 02-1p). The Court, however, does not read the ALJ's comments to refer to her

---

[7]The Court again notes that Plaintiff has not challenged this finding.

11

failure to have surgery as it is not the Court's understanding that the medications that Plaintiff was not taking were related to her obesity (*see* Tr. 134, 143; *see also* Tr. 105).  In any event, even if the ALJ's remarks did contemplate her failure to have surgery, the medial evidence of record supports the ALJ's conclusion that Plaintiff can perform her past relevant work as a telemarketer in spite of her obesity.  Mitchell's complaints otherwise are without merit.

Plaintiff has raised three claims in bringing this action. All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Teresa A. Mitchell.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging

the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 20th day of March, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE